UNITED STATES of America,
Appellee,

v.

Carlos VAZQUEZ–MOLINA,
Defendant, Appellant.

No. 03–2655.

United States Court of Appeals,
First Circuit.

Submitted Sept. 21, 2004.

Decided Nov. 15, 2004.

Charles F. Willson and Nevins & Nevins LLP on brief for appellant.

H.S. Garcia, United States Attorney, Nelson Pérez Sosa and Thomas F. Klumper, Assistant United States Attorneys, on brief for appellee.

Before SELYA, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

SELYA, Circuit Judge.

After defendant-appellant Carlos Vazquez–Molina pleaded guilty to a charge of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 841(a), 846, the district court sentenced him to serve a 136–month incarcerative term. Vazquez–Molina now challenges his sentence on two grounds: (i) that the district court's explanation for fixing the sentence at a particular point in the guideline sentencing range (GSR) failed to satisfy the command of 18 U.S.C. § 3553(c)(1) and (ii) that the court indulged in impermissible double counting when deciding upon the sentence.

On appeal, our first task is to answer a question of first impression in this circuit concerning the appropriate standard of review. Once that chore is completed, we filter the appellant's contentions through that screen. When all is said and done, we affirm the sentence.

## I.

### Background

The factual predicate for the offense of conviction is immaterial for purposes of this sentencing appeal. We are concerned here solely with the facts relevant to the imposition of sentence. Those facts require only a lacedaemonian account.

Following the return of the indictment, the appellant maintained his innocence for some time. On July 15, 2003, he entered into an agreement with the government that entailed, among other things, an admission of guilt on the conspiracy charge and the dismissal of a related forfeiture count. Interstitially, the plea agreement contained stipulations that the charged conspiracy, insofar as it pertained to the appellant, involved at least three and one-

half but less than five kilograms of cocaine, USSG § 2D1.1(c)(5); that the appellant occupied a supervisory position in the drug ring, *id.* § 3B1.1(a); and that a firearm was possessed during the commission of the offense, *id.* § 2D1.1(b)(1). Under the sentencing guidelines, this combination of factors yielded an adjusted offense level of 34. The appellant's timely acceptance of responsibility, conceded by the government, reduced his total offense level (TOL) to 31. *See id.* § 3E1.1. The plea agreement did not specify either the appellant's criminal history score or criminal history category (CHC), but the parties nonetheless agreed to recommend a GSR of 121–151 months to the sentencing court.

At the change-of-plea hearing, the court conducted an impeccable colloquy. In the course of that colloquy, it presented the appellant with the aforementioned stipulations and the appellant readily acknowledged them. The court thereupon accepted the change of plea and directed the preparation of a presentence investigation report (the PSI Report).

The probation officer determined that when the appellant committed the underlying offense, he was on probation for state charges related to the illegal appropriation of sixteen pedigreed horses and a sum of money. *See* P.R. Laws Ann. tit. 33, §§ 4272(b), 4286(b). The PSI Report memorialized this finding and recommended that the appellant's criminal history score be increased by one point due to the prior offense and two points due to the probation violation. *See* USSG § 4A1.1(c)-(d). These additions placed the appellant solidly within CHC II and, combined with a

TOL of 31, yielded a GSR of 121–151 months.[1]

The district court convened the disposition hearing on November 6, 2003. The court inquired if the appellant had read the PSI Report and it received an affirmative response. The court then queried the appellant and his counsel about corrections to the PSI Report. They interposed none that are of consequence here.

During the proceedings that ensued, the appellant's lawyer argued for a sentence at the bottom of the GSR, emphasizing that the appellant had admitted his guilt, exhibited remorse, and sought psychiatric care for depression. The prosecutor, without any developed argumentation, suggested a sentence at the high end of the GSR. The district court settled upon a midpoint in the range (136 months). The court reasoned that "[s]ince the defendant is [a] second offender, a sentence in the middle of the guideline range will serve the objectives of punishment and deterren[ce]."

Following the pronouncement of sentence, the court asked if the parties had anything to add or to say. In reply, the appellant's counsel made a series of requests, *viz.*, that his client be allowed to surrender voluntarily, to serve his sentence at a federal penitentiary in Florida, and to enroll in a drug-treatment program while incarcerated. At no time was an objection interposed to the sufficiency of the court's explanation as to why it chose a 136–month sentence.

## II.

### Analysis

In this venue, the principal thrust of the appellant's argument is that the district

---

1. This GSR could not have come as a surprise to the appellant. The parties, in the plea agreement, jointly had agreed to recommend a GSR of 121–151 months to the sentencing court. Given a TOL of 31, that GSR could

only have been premised on a CHC of II. *See* USSG Ch.5, Pt.A (sentencing table). A similarly situated offender in CHC I would have faced a GSR of 108–135 months. *See id.*

court gave too cursory an explanation for choosing the sentence (and, thus, committed reversible error). Additionally, the appellant claims that the court's reference to him as a second offender was confusing, unfair, and constituted double counting, as his criminal history score already had taken into account his second-offender status.

We begin our discussion by delineating the applicable standard of review. We then visit separately each of the appellant's asseverations.

### A.

### Standard of Review

■ Conventionally, appellate courts review the interpretation and application of statutes de novo, *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir.1997), and factual findings for clear error, *United States v. St. Cyr*, 977 F.2d 698, 701 (1st Cir.1992). Here, however, the appellant did not raise the issue of the district court's ostensible noncompliance with section 3553(c)(1) at the time of sentencing. This omission presents a threshold issue that is of novel impression in this circuit.

The courts of appeals are divided on what effect a defendant's silence at sentencing has on an appeal that seeks to contest the sentencing court's failure to comply with section 3553(c)(1). Two of our sister circuits have characterized the failure to raise a section 3553(c)(1) objection in the trial court as a waiver. *See United States v. McCabe*, 270 F.3d 588, 590 (8th Cir.2001); *United States v. Caicedo*, 937 F.2d 1227, 1236 (7th Cir.1991). The Ninth Circuit has characterized that sort of default as a forfeiture. *See United States v. Vences*, 169 F.3d 611, 613 (9th Cir.1999). Two other courts of appeals, while not discussing the distinction between waiver and forfeiture, have reviewed unpreserved section 3553(c)(1) objections for plain er-

ror. *See United States v. Merlino*, 349 F.3d 144, 161 (3d Cir.2003); *United States v. James*, 46 F.3d 407, 407 (5th Cir.1995). That is tantamount to treating such defaults as forfeitures. *See United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

In *United States v. Rodriguez*, 311 F.3d 435 (1st Cir.2002), we delineated the taxonomy of waiver and forfeiture. "A party waives a right when he intentionally relinquishes or abandons it," whereas he forfeits the right if he "fails to make a timely assertion of [it]." *Id.* at 437. For purposes of appellate review, the distinction is important. While a waived issue normally may not be resurrected on appeal, a forfeited issue may be reviewed for plain error. *Id.* This case, therefore, requires us to take sides in the aforedescribed circuit split.

■ We think that the view espoused by the Ninth Circuit, and impliedly adopted by the Third and the Fifth Circuits, better reflects the realities of this situation. For aught that appears, the appellant, at the time of sentencing, did not make a conscious, informed decision to forgo a section 3553(c)(1) challenge. Rather, he simply let the opportunity slip (whether by oversight, inadvertence, or ignorance is unimportant for this purpose). Where, as here, an appellant merely neglects to raise a claim before the trial court, forfeiture more aptly captures the nature of the default. Accordingly, we hold that, absent some basis for finding an express waiver, the failure to raise a section 3553(c)(1) objection in the trial court is a forfeiture. The appellant's claim is, therefore, subject to review for plain error.

■ To some extent, that may be a Pyrrhic victory. The jurisprudence of plain error is not appellant-friendly. Under that regime, an appellant must demonstrate: "(1) that an error occurred (2)

which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Duarte,* 246 F.3d 56, 60 (1st Cir.2001). We move next to the application of that standard.

## B.

### Adequacy of the Explanation

As said, the appellant's principal plaint is that the sentencing court's contemporaneous explanation for the length of his sentence was insufficient as a matter of law. In voicing this plaint, the appellant does not contest either the GSR itself or the components used to construct it. Rather, he embraces the GSR, emphasizes the applicability of section 3553(c)(1), and builds his argument around what that provision requires.

■ Section 3553(c)(1) is part of a larger statutory scheme. Pertinently, the scheme requires that, in federal criminal cases, the sentencing court "shall state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). This command refers to the court's determination of the applicable GSR. From that point forward, the district court has virtually unbridled discretion in choosing a sentence within the determined GSR, and the court's choice ordinarily requires no further explanation. Hence, the sufficiency of the district court's reasoning for a particular within-range sentence is unreviewable. *See, e.g., United States v. Mansur–Ramos,* 348 F.3d 29, 31 (1st Cir. 2003).

In certain cases, however, the statutory scheme imposes a further requirement of heightened specificity on the sentencing court. If the sentence imposed is within the GSR and the GSR itself spans more than twenty-four months, the court, at the time of sentencing, must state openly "the reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c)(1). Since the GSR in this case bridged a thirty-month interval, section 3553(c)(1) controlled—and the court below had a duty to articulate why it settled upon a particular point within the GSR.

Although the sentencing court provided some contemporaneous explanation, the appellant insists that its comments were too sketchy and, therefore, did not satisfy the statutory burden of explication. When a sentencing court is alleged to have neglected its statutory duty under section 3553(c)(1), we have jurisdiction to review that allegation on appeal. *See, e.g., United States v. Veteto,* 920 F.2d 823, 826 (11th Cir.1991); *see also* 18 U.S.C. § 3742(a)(1). As previously established, our review here is for plain error. *See supra* Part II(A).

■ Against this backdrop, we examine the sentencing court's stated explanation. Though curt, that explanation pinpointed the appellant's second-offender status—a sentencing consideration made relevant by statute. *See* 18 U.S.C. § 3553(a)(1) (referencing the need to consider an offender's criminal history when imposing sentence). The court added that a mid-range sentence would address the goals of punishment and deterrence, two of the objectives enumerated in 18 U.S.C. § 3553(a)(2).

■ This court has not yet considered what constitutes an adequate explanation for purposes of section 3553(c)(1). The precedents elsewhere focus on whether the court's comments specifically identify some discrete aspect of the defendant's behavior and link that aspect to the goals of sentencing. *See, e.g., United States v. Rosa,* 11 F.3d 315, 344–345 (2d Cir.1993); *United States v. Wilson,* 7 F.3d 828, 839 (9th

Cir.1993). We think that is a sensible approach.

In the case at hand, the sentencing court identified the appellant's second-offender status as the aspect of his behavior that it thought warranted a mid-range level of punishment. That was not an unreasonable reference, particularly since the prior offense involved the purloining of no fewer than sixteen horses, valued at more than $28,000. The court also plausibly linked the appellant's recidivist behavior to two of the foremost objectives of sentencing. *See* 18 U.S.C. § 3553(a)(2) (identifying, inter alia, punishment and deterrence as proper objectives of sentencing). While these comments are bareboned, we believe that they are adequate to survive plain error review. The test under section 3553(c)(1) must center not only on whether the explanation meets the identification and linkage requirements but also on whether it sufficiently shows a thoughtful exercise of the court's sentencing responsibility and a degree of care and individualized attention appropriate to the solemnity of the sentencing task. *See Rosa,* 11 F.3d at 344. Measured against this benchmark, there is enough in the district court's statement to avoid a finding of plain error.

The case law supports this conclusion, at least by negative implication. The district court's thought process was clear and easily understandable, so this is not a case like *United States v. Zackson,* 6 F.3d 911 (2d Cir.1993), in which the sentencing court's explanation was hopelessly vague. *See id.* at 923–24 (vacating sentence and noting that district judge said only: "I have considered everything."). The district court's explanation reflected individualized consideration, not some mechanical rule, so this is not a case like *United States v. Upshaw,* 918 F.2d 789 (9th Cir.1990), in which the court announced that it was "not going to sentence at the upper limits, but rather in

the mid range in accordance with the court's customary procedure," *id.* at 792 (quoting district court transcript and vacating sentence), or *United States v. Wilson,* in which the sentencing court made no statement at all pertaining to the defendant's conduct, 7 F.3d at 839 (vacating sentence on this ground). Finally, the district court's explanation had substance, so this case is unlike *United States v. Veteto,* in which the sentencing court stated only that a particular term "seem[ed] right." 920 F.2d at 826 (vacating sentence because the court's terse comment was "a truism and not an explanation").

In an effort to blaze a new and different trail, the appellant asserts that the case at bar resembles *United States v. Catano,* 65 F.3d 219 (1st Cir.1995), and should be decided accordingly. For the following reasons, we find his reliance on *Catano* misplaced. First, *Catano* involved the establishment of a defendant's GSR—a section 3553(c) problem, but not one that implicated section 3553(c)(1). *See id.* at 229. The decision is, therefore, largely inapposite. Second, unlike the assignment of error here, the claim in *Catano* was fully preserved. *Id.* at 229 & n. 12. Finally, the *Catano* panel concluded that greater specificity was warranted because the sentencing court adopted a PSI Report that was fatally ambiguous. *Id.* at 230. No such ambiguity permeates this record—the sentencing court's comments were brief, but very clear.

The short of it is that this case is one in which the sentencing court adverted to a specific aspect of the appellant's behavior that it found troubling and concluded, on the record, that this aspect—a consideration made relevant by 18 U.S.C. § 3553(a)(1)—indicated that a mid-range sentence would satisfy the objectives of punishment and deterrence (two of the goals listed in 18 U.S.C. § 3553(a)(2)).

While a fuller elaboration would have been desirable, we find this explanation marginally adequate.

### C.

### Double Counting

The appellant also claims that the sentencing court's reference to his second-offender status constitutes double counting because his criminal history score already takes that datum into account. To the extent that the appellant asserts that the prior offense impermissibly influenced the district court to sentence him at a mid-point in the GSR, it is entirely possible that we lack appellate jurisdiction to consider that assertion. *See United States v. O'Connell,* 252 F.3d 524, 529–30 (1st Cir. 2001) (explaining that when a district court sentences a defendant at any point within the appropriate GSR, the court of appeals ordinarily lacks authority to review that sentence; collecting cases).

In all events, we need not probe that point too deeply. Even if we possess appellate jurisdiction, the appellant would not benefit. After all, he did not voice any objection below to what he now terms double counting. Thus, he forfeited the claim and, accordingly, our review would only be for plain error. *See Duarte,* 246 F.3d at 60. There is no error in this regard, plain or otherwise.

In mounting this argument, the appellant questions whether the judge realized that the prior offense already had figured into the sentencing calculus. That question is easily dispatched. The appellant's criminal record was discussed at length during the change-of-plea hearing. The appellant at first denied having committed an earlier offense. The prosecutor contradicted that denial and related the appellant's prior criminal record. The court then noted that, as part of the plea agreement, the parties had agreed on a GSR of 121–151 months—a range that apparently contemplated the appellant's placement in CHC II (and, thus, contemplated the existence of a prior criminal record). *See supra* note 1. Given this colloquy and the court's probing of the point, it is difficult to imagine that the court was unaware either of the appellant's criminal past or of the role that it played in the calculation of his GSR.

■ That brings us to the matter of double counting. We have observed before that, in the sentencing context, double counting "is a phenomenon that is less sinister than the name implies." *United States v. Zapata,* 1 F.3d 46, 47 (1st Cir. 1993). The same fact sometimes can serve multiple purposes at sentencing and those multiple uses are generally permissible except in instances in which the sentencing guidelines explicitly forbid double counting. *See United States v. Harris,* 41 F.3d 1121, 1123 (7th Cir.1994); *United States v. Lilly,* 13 F.3d 15, 19 (1st Cir.1994); *United States v. Wong,* 3 F.3d 667, 670–72 (3d Cir.1993).

Here, the dual use of the appellant's prior felony conviction operates on two different indices—on the one hand, the calculation of the GSR, and on the other hand, the selection of a particular sentence within the GSR. That is particularly important because the computation of a defendant's criminal history score for purposes of establishing his GSR takes a categorical approach, treating all felony convictions equally despite the obvious fact that not all similarly labeled offenses are equally heinous. Conversely, the use of the prior offense in choosing a sentence within the GSR looks past the label to the facts of the offense itself.

Courts have broad discretion to fine-tune a sentence within a properly calculated GSR. Given both this latitude and the

absence in the sentencing guidelines of any prohibition against using the fact or nature of a prior offense as a basis for choosing a within-range sentence, we conclude that the court's use of the appellant's prior conviction as a basis for the sentence imposed was entirely permissible. *See, e.g., United States v. Pena,* 339 F.3d 715, 719 (8th Cir.2003) (holding that a factor may be considered for a second time in choosing a point within the range); *United States v. Olvera,* 954 F.2d 788, 790–91 (2d Cir.1992) (rejecting double counting argument on the ground that a sentencing judge is free to use all relevant information about a defendant when pinpointing a particular sentence *within* a range); *United States v. Paz Uribe,* 891 F.2d 396, 400 (1st Cir.1989) (holding that the sentencing court acted within its discretion in considering a defendant's refusal to accept responsibility even though the calculation of the GSR already had taken that development into account).

### III.

### Conclusion

We need go no further. Although we urge sentencing courts to go the extra mile to ensure compliance with the imperatives of section 3553(c)(1), the explanation offered here is not so inscrutable as to sink to the level of plain error. Nor does the sentence depend on a proscribed form of double counting. The appeal is, therefore, without merit.

*Affirmed.*